28.    The actions of the defendant, as recounted above, were in all respects knowing

and intentional, and were not committed by mistake, accident or other innocent reason.

Dana J. Boente
Acting United States Attorney

By: _____
Alexander T.H. Nguyen
Assistant United States Attorney

Peter V. Roman
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section

**Defendant's Signature:** After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: April __8__, 2014

Alok Kumar Dhir
Defendant

**Defense Counsel Signature:** I am Alok Kumar Dhir's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: April __8__, 2014

Henry F. Schuelke III, Esq.
William B. Shields, Esq.
Counsel for the Defendant

Page 8 of 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:14-cr-181 |
| v. | Hon. Anthony J. Trenga |
| ARIEL MANUEL FRIEDLER, | Sentencing Date: 8/1/14 |
| Defendant | |

## POSITION OF THE UNITED STATES
## WITH RESPECT TO SENTENCING

From 2007 through 2011, defendant Ariel Manuel Friedler – the head of a

multi-million dollar company and government contractor for the White House,

members of Congress, and others, with over a hundred employees reporting to him

– engaged in multiple and deliberate campaigns to steal confidential and

proprietary information from much smaller competitors. He bypassed their

password protections using former client information; he enlisted his underlings to

decrypt client passwords; he secretly logged in to download key competitive data

that he had no right to view. From Company A, he stole client lists (labeled "hot

leads" on his Excel Chart), Ex. A. From Maxient, he copied-and-pasted 110 pages

worth of closely-guarded details about the features and layout of the competing

product. Ex. B.[1] In the student records management field, client lists and design

features are the lifeblood of the business, and the defendant stole them outright.

After taking this key competitive information, he would powwow with employees

about how to use it to Symplicity's advantage. In the case of Company A, he ordered

---

[1] Given the proprietary nature of the information, the government is filing exhibits
under seal.

EXHIBIT

$C$

ALL-STATE LEGAL®

a staff member to poach clients: "tell[] them we know they are a [Company A] client and we can a lot more for them." In the case of Maxient, he directed employees to develop similar features for Symplicity (emails were titled "Maxient features to add"). *See also* Ex. C (email string from A. Friedler to staff months after intrusion stating: "this is one of the only features maxient had we did not… whole reason i wanted it built was for schools who may demo them and say how come symp doesnt have it… how can we ensure that everyone knows we have this capabilitiy [sic]?").

Yet in his letter to the Court, the defendant dismisses his criminal conduct – and the lengthy conspiracy that he led – as the result of "psychological challenges" which caused him "[o]n a whim" to log in – an "irrational obsession" in retrospect. PSR, 6/26/14 Letter from A. Friedler to Hon. Anthony J. Trenga. His conduct, he goes on to claim, was triggered by the "occasional loss of business to Maxient," which he opines, is "inferior." *Id.* And anyway, he notes, that business line only made up "5% of Symplicity's overall business," a "sliver," and had a "minimal impact." *Id.*; *but see* Dkt. No. 8, Statement of Facts at ¶ 14 (A. Friedler emailing that "maxient feels like a website… we are bleeding… we have lost close to a dozen this year"). For the large, multi-million dollar corporation the defendant owns, five percent may be no big deal. For the much smaller companies he victimized, including Company A and Maxient – a husband-and-wife business in the Eastern District of Virginia – that work means everything. *See* PSR, 7/22/14 letter from Maxient co-owner to Hon. Anthony J. Trenga ("I set up our system architecture and wrote the code, while [my wife] worked on our graphics and advertising.").

Page 2 of 14

The government agrees that the applicable Total Offense Level is 15, that the defendant falls within Criminal History Category I, and that the resulting advisory Guidelines Range is **18 to 24 months of imprisonment**. This range -- which the signed plea agreement contemplates -- is the range within which the defendant should be sentenced. The government additionally asks the Court to order **$274,197.60** in restitution as costs incurred in the responding, investigation, or prosecution of the offense, and a meaningful fine.

I.    Offense of Conviction

On May 21, 2014, the defendant pled guilty to Conspiracy to Access a Protected Computer Without Authorization, in violation of Title 18, United States Code, Section 371 (18 U.S.C. § 1030(a)(2)(C) and 18 U.S.C. § 1030(c)(2)(B)(i)). For four years beginning in 2007, the defendant with others at Symplicity Corporation conspired to hack into their competitors' computers and use stolen information to compete. PSR ¶ 28. The defendant personally and repeatedly attempted to hack into Company A and Maxient. *See, e.g.,* PSR ¶¶ 10-17, 28-29, 32, 39, 46. He and his co-conspirators decrypted and used the usernames and passwords of their own former clients to hack into Maxient's computers. *See, e.g.,* PSR ¶ 35. He disguised his intrusions by masking his IP address using TOR, which helps internet users stay anonymous. *See* PSR ¶ 31 (discussing TOR while "trying to get into a competitors shit"); ¶ 38 ("cool—so masked"). The defendant continued planning for future hacks, even after his initial success. PSR ¶ 43 (months later, Friedler asking co-conspirator

Alok Dhir to re-send decrypted passwords from a former university client as related to the "super h@ckery"); ¶¶ 44-47.

Once inside, he stole client lists and product information including "new and key features, planned upgrades, layout of the software, and key screen shots." PSR ¶¶ 29, 40; Exs. A and B. Right away, he and others used this stolen information for commercial advantage by modifying their products and sales strategies to better compete against the victims. PSR ¶ 30 (telling employee after stealing client list to "please send a personalized email... telling them we know they are a [Company A] client and we can do a lot more for them"], ¶ 41 (emailing sales officer Kelley after stealing 110 page list of features about "Maxient features to add"), ¶ 47 (emailing sales officer Kelley after intrusion about talking points against Maxient to be used in sales pitches). In short, the defendant led the conspiracy, organized the intrusions, recruited employees to decrypt the encrypted passwords of Symplicity's own clients, and used the stolen information to inform Symplicity's software development and sales strategy. PSR ¶ 28. The offense of conviction here – conspiracy to access a protected computer without authorization – is a Class D felony, punishable by a maximum of five years of imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment.

## II.   The Presentence Investigation Report

The defendant's sentencing guidelines range was properly calculated by the Probation Office at 18 to 24 months of imprisonment, given a total offense level of 15 and a criminal history category of I, as follows:

| Guideline | |
|---|---|
| Base Offense Level (Section 2B1.1(a)(2)) | 6 |
| Loss more than $70,000 and no more than $120,000 (Section 2B1.1(b)(1)(E)) | +8 |
| Access devices / means of identification (Section 2B1.1(b)(11)) | +2 |
| Leadership role (Section 3B1.1(c)) | +2 |
| Timely acceptance of responsibility (Section 3E1.1(a) and (b)) | -3 |
| TOTAL | 15 |

PSR ¶¶ 58, 61, 63, 67. Given the defendant's timely acceptance of responsibility, the government moves this Court for a one-level reduction under U.S.S.G. § 3E1.1(b), which the Probation Office has appropriately included in its calculations. PSR ¶¶ 7, 66.

III.   **Application of Sentencing Factors**

Although the Sentencing Guidelines are advisory, *United States v. Booker* requires sentencing courts to "consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005). A "district court shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then, the court shall consider that range as well as other relevant factors set forth in the guidelines and those factors set forth in [18 U.S.C.] § 3553(a) before imposing the sentence." *United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005) (citation omitted).[2]

---

[2] Title 18, United States Code, Section 3553(a) provides: "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -- (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence

A.     **Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

The crime committed here was extremely serious – because of its nature, its execution, and the defendant's supervisory role in it. PSR ¶ 3 (leadership enhancement). The defendant was the head of a multi-million dollar government contractor with 154 employees whose clients included the White House and members of Congress. PSR ¶¶ 20, 96. Tax records from the corporation showed it to perform well. PSR ¶ 96. And yet, the defendant repeatedly corralled senior officers working for him into decrypting the passwords of former college and university clients in order to log into the systems of a competing systems for ideas on how to improve his product. This confidential and proprietary information is information companies – including Symplicity itself – guards extremely closely because it is what gives them their competitive advantage. PSR ¶ 26 (companies "require clients or potential clients to sign agreements with non-disclosure provisions, and frequently file open records requests to learn more about their competitors"). Indeed, the defendant himself confirms this. PSR, 6/26/14 Letter from A. Friedler to Hon. Anthony J. Trenga ("When Symplicity lost its first existing customer to

---

imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for -- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."

Maxient in September 2009, I and others at Symplicity became concerned that our former customer might share significant information about the inner workings of Advocate with Maxient.").

Even now, at the sentencing stage and over two years after his conduct came to light, the defendant insists that his criminal conduct was impulsive and irrational. *See* PSR, 6/26/14 Letter from A. Friedler to Hon. Anthony J. Trenga. But in reality, the conspiracy he led and coordinated was calculated to gain an unfair competitive advantage: It was persistent in timing – intrusions were preceded by a string of loss of business. Ex. D (emails showing losses to Maxient with defendant telling co-conspirator that "we are bleeding advocate...we have lost close to a dozen this year" and sales officer telling defendant that "Maxient is killing us"); PSR ¶¶ 10-12 (Maxient reporting years-long attempts by Symplicity); ¶ 30 (after intruding into Company A to obtain client lists, attempts were made to poach clients).

It was deliberate. PSR ¶ 28 (defendant used anonymizing software before intrusions); ¶ 31 ("trying to get into a competitors shit"); ¶ 34 ("want to see if we can use old client who used us to get into maxient – ill do it from somewhere else"); ¶ 36 ("desperate times calls for desperate measures"); ¶ 38 (using TOR to anonymize IP address: "cool—so masked"). It was not conducted by a rogue employee, but by a team of top officials. PSR ¶ 15 (defendant and his Chief Technology Officer decrypting former client passwords); ¶ 43; ¶ 47 (after intrusion, sales chief and defendant circulated talking points to distinguish Symplicity from Maxient); ¶ 54. It

Page 7 of 14

was tried and done repeatedly. PSR ¶¶ 29, 32, 39, 47. It was motivated by having lost customers. PSR ¶ 33 ("we are bleeding"); ¶ 42 ("until dust settles... don't say anything about seeing competitors shit"). It was not driven by mere curiosity, but by clear business intent to take and use stolen information. PSR ¶ 14 (search warrant revealed proprietary data from Maxient on defendant's laptop computer); ¶ 28 (after intrusions, information was shared with co-workers); PSR, 6/26/14 Letter from A. Friedler to Hon. Anthony J. Trenga ("I shared some of the information I learned with others at Symplicity."); ¶ 30 (instructing employee, after copying Company A's client list, to "tell them we know they are a [Company A] client and we can do a lot more for them."); ¶ 40 (copying-and-pasting 110 page document with proprietary information); ¶ 41 (defendant and sales official discussing "Maxient features to add"); ¶ 47 (after intrusion, defendant and Kelley circulated talking points about competitor); Ex. C (2/8/11 email from defendant to Dhir and Kelley enclosing a screen shot from Maxient, followed by months of development work and 6/8/11 email from Friedler to staff discussing Rules Engine feature: "this is one of the only features maxient had we did not... whole reason i wanted it built was for schools who may demo them and say how come symp doesnt have it... how can we ensure that everyone knows we have this capability?").

The defendant committed these crimes not for the same reason other defendants sometimes commit crimes: poverty, addiction, need, desperation, lack of options. He did so to win business, and unfairly so. And he did it in a business line that – ironically enough, as the victim points out – relates to student disciplinary

records. He is educated. PSR ¶¶ 93-94 (college and law school degrees from premier institutions). He is financially secure. PSR ¶ 97 (multi-million distributions from company each year); 101 (listing net worth). Lenient punishment will not promote respect for the law here. In light of these factors, a sentence within the range of 18 to 24 months – as contemplated by the signed plea agreement – would be appropriate. *See* H. Rep. 98-1017, 98th Cong. 2d Sess., Judiciary Committee Report on Sentencing Revision Act of 1984, at 39 ("a criminal sentence must not cause disrespect for the law. This purpose is avoided when excessively lenient sentences are avoided.")

### B.     Need for the Sentence Imposed – Adequate Deterrence and Protection of the Public – And Sentencing Considerations

This is a case with extremely high deterrent value. First, companies that fall prey to computer intrusions, hacking, and other unauthorized access – especially those that handle sensitive data such as educational records – are often reluctant to report crimes like these because they fear public embarrassment. "Cybercrime is a growth industry. The returns are great, and the risks are low... Most cybercrime incidents go unreported."[3] And even when they are reported, their investigation and prosecution is very resource-intensive. A sentence that is too lenient here would not deter individuals such as the defendant and others contemplating this kind of

---

[3] *See* Center for Strategic and International Studies, *Net Losses: Estimating the Global Cost of Cybercrime: Economic Impact of Cybercrime II* 4 (2014), *available at* http://csis.org/files/attachments/140609_rp_economic_impact_cybercrime_report.pdf

targeted computer crime. But a lenient sentence will chill and deter other victim companies from stepping forward and reporting crimes.

Second, the defendant's theft and use of proprietary information for competitive advantage are part of a swelling tide of unauthorized accesses that are relatively easy to accomplish, but which inflict great harm -- especially to American small businesses. The defendant has suggested, repeatedly, that what he did was fairly common and relatively minor. PSR, 6/26/14 Letter from A. Friedler to Hon. Anthony J. Trenga. That's not true. This view completely disregards the countless hours victims spend trying to figure out how the defendants broke into their computers, how to stop them from coming back in, whether any files or computers were destroyed or damaged, and what was stolen, how much damage that could do, and how to mitigate it. PSR ¶ 26 (companies in the student records management field take many steps to guard their proprietary information). In this case alone, the defendant spent four years attempting to and succeeding in hacking into his competitors' computers, resulting in losses of at least $274,197.60. *See* PSR, Victim Impact Statement. These attacks drained the already-strapped resources of the victim companies, potentially stunting their growth and harming their reputation. An appropriate sentence within the Guidelines Range – which the signed plea agreement contemplates – would help address the false perception that unauthorized access of a computer for commercial advantage is trifling or ought to be rationalized as just another means of doing business. *See* PSR, 6/26/14 Letter from A. Friedler to Hon. Anthony J. Trenga (claiming that he learned about the

intrusion technique – decrypting passwords using online tools – from another employee who had learned it from yet another source).[4] Moreover, attacks of this nature often target small businesses such as Company A and Maxient. "According to the National Cyber Security Alliance, one in five small businesses falls victim to cybercrime each year."[5] Sixty percent of such businesses reportedly go out of business within six months of suffering a cyberattack. *See id.* It is not difficult to see how small businesses have a more difficult time weathering the sort of cyber attack the defendant launched. As Maxient explained, upon discovering the attacks, it needed to devote already scarce resources to threat detection:

> To better protect our intellectual property and for the security of our clients, we immediately moved to increase our system security and amp up our monitoring and logging. We spent significant time developing and writing processes that sent us hourly reports of all suspicious accesses on our site, reviewed those reports multiple times every single day, completed regular audits of logs that recorded other activity on our application (not just access attempts), and so much more… targeted monitoring of their specific threat became a full-time job in itself that I had to absorb into my already overfilled days. Of course, the hardship was never mine alone. Where I ran out of time and energy, [my wife] and our growing staff [of only 10 employees] had to pick up and similarly overcommit. As a team, we found ourselves constantly on defense, draining our time from improving and supporting our product… Hours were spent each week reviewing our system, sometimes adding up to whole additional work days of time.

---

[4] *See e.g.,* Dan Goodin, *Anatomy of a Hack: Even Your 'Complicated' Password is Easy to Crack,* Wired, May 28, 2013, *available at* http://www.wired.co.uk/news/archive/2013-05/28/password-cracking/viewall (detailing how a "self-admitted newbie to password cracking downloaded a list of more than 16,000 cryptographically hashed passcodes" and managed "to decipher[] almost half of them" in the span of "a few hours").

[5] *See* Robert Strohmeyer, *Hackers Put a Bull's-eye on Small Business,* PC World, Aug. 12, 2013, *available at* http://www.pcworld.com/article/2046300/hackers-put-a-bulls-eye-on-small-business.html.

PSR, Victim Impact Statement (Maxient); *see also* PSR, Victim Impact Statement (Company A) (describing company president personally spending "hours of time to determine what was accessed and insuring no data was lost or altered or damaged"); PSR ¶¶ 10-12. The court should impose a sentence that will adequately deter these harmful computer attacks and intrusions on American small businesses, including – as is the case with Maxient – small businesses in the Eastern District of Virginia. PSR ¶ 24 (based in Charlottesville, Virginia). Computer crimes – especially those done for financial reasons and to victimize American businesses – are not trivial. *But see* PSR ¶ 43 (co-conspirator jokingly referring to intrusion as "super h@ckery"); PSR, 6/26/14 Letter from A. Friedler to Hon. Anthony J. Trenga (defendant casting criminal conduct in retrospect as "irrational").

Finally, this case is a particularly good candidate for deterrence because of the premeditated and persistent nature of the defendant's scheme. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crime are 'more rational, cool, and calculated than sudden crimes of passion or opportunity' these crimes are 'prime candidates for general deterrence.'"). The conduct here took place over at least four years. PSR ¶ 27. It involved careful preparation before specific intrusions, including recruiting multiple co-workers to decrypt passwords, PSR ¶ 35; using anonymizing software such as TOR to mask the intrusions, PSR ¶ 31 ("trying to get into a competitors shit"); 36 ("desperate times calls for desperate measures"); ¶ 38 (using TOR: "cool… masked"); close

coordination with employees to hide the fact that intrusions had occurred, PSR ¶ 42 ("hey until dust settles... don't say anything about seeing competitors shit to anyone but alok and brian which know"); and planning the plagiarism of product features, PSR ¶ 42 ("Maxient features to add"); *see also* Ex. C (email from A. Friedler to staff months after intrusion stating: "this is one of the only features maxient had we did not... whole reason i wanted it built was for schools who may demo them and say how come symp doesnt have it... how can we ensure that everyone knows we have this capabilitiy [sic]?"); PSR, Victim Impact Statement (Maxient) (because Symplicity could claim that it had similar features, sole-sourcing contracts for Maxient dried up: "Once Symplicity knew the features of our software, we found ourselves less often being recognized as a sole source, since Symplicity could at least claim, if not emulate, everything we had, including many features that we'd spent years of our own time developing."). The deliberate and rational business nature coupled with the long duration of these intrusions and together with the defendant's belief that he would be able to evade detection vastly increases the chance that a significant sentence will discourage others who are contemplating using hacking as a tool for commercial advantage. A prison sentence within the range contemplated by the plea agreement would help deter the defendant and others like him from continuing to commit these crimes. *See, e.g., United States v. Steele*, Crim. No. 1:12-cr-515-GBL (E.D. Va. 2013) (government contractor who accessed confidential information of competitor sentenced to 48 months imprisonment); *United States v.*

*Musacchio*, Crim. No. 3:10-cr-308-P (N.D. Tex. 2013) (CEO of transportation company hacking competitor sentenced to 60 months of imprisonment).

Conclusion

Computer crimes from corporate competitors are a growing problem, as the Court is aware. They cause significant financial and reputational harm to victims. They can be lucrative for perpetrators. Cases like these carry great deterrent value because of their pre-meditated and calculated nature. For these reasons, the United States asks for a sentence within the guidelines range as contemplated by the plea agreement as reasonable and accounting for each of the factors set forth in Title 18, United States Code, Section 3553(a). The government also asks the Court to impose restitution in the amount of $274,197.60 consisting of costs incurred in the responding, investigation, or prosecution of the offense, and a meaningful fine.

Respectfully submitted,

Dana J. Boente
United States Attorney

By:          /s/
          Alexander T.H. Nguyen
          Assistant United States Attorney
          Peter V. Roman
          Special Assistant United States Attorney (LT)
          United States Attorney's Office
          Eastern District of Virginia
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          Ph: (703) 299-3700
          Fax: (703) 299-3981
          Email: alexander.nguyen@usdoj.gov
          Email: peter.roman@usdoj.gov

Date: July 25, 2014

Page 14 of 14

## Certificate of Service

I hereby certify that on July 25, 2014, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notification of filing

(NEF) to:

David W. O'Brien
Crowell & Moring
1001 Pennsylvania Ave NW
Washington, DC 20004
Telephone – 202-624-2500
dobrien@crowell.com

Kenneth L. Wainstein
Adam S. Lurie
Cadwalader, Wickersham & Taft LLP
700 Sixth Street, N.W.
Washington, DC 20001
Telephone – 202-862-2474
Facsimile - 202-862-2400
ken.wainstein@cwt.com
adam.lurie@cwt.com

I also certify that on July 25, 2014, I will send a true and correct copy of the

foregoing by e-mail to the following:

Carla G. Coopwood
Senior U.S. Probation Officer
Manassas, VA
703/366-2113
Carla_Coopwood@vaep.uscourts.gov

By:      _____/s/_____
         Alexander T.H. Nguyen
         Assistant United States Attorney
         United States Attorney's Office
         Eastern District of Virginia
         2100 Jamieson Avenue
         Alexandria, Virginia 22314
         (703) 299-3988 office, (703) 299-3981 fax
         alexander.nguyen@usdoj.gov



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.                                              Criminal No. 1:14-cr-181

ARIEL MANUEL FRIEDLER,

Defendant

## PLEA AGREEMENT

Dana J. Boente, Acting United States Attorney for the Eastern District of Virginia;

Alexander T.H. Nguyen, Assistant United States Attorney; Peter V. Roman, Trial Attorney, U.S.

Department of Justice Computer Crime & Intellectual Property Section; the defendant, Ariel

Manuel Friedler; and the defendant's counsel, David W. O'Brien, Stephen M. Byers, Kenneth L.

Wainstein, and Adam S. Lurie, have entered into an agreement pursuant to Rule 11 of the

Federal Rules of Criminal Procedure. The terms of the agreement are as follows:

1.      **Offense and Maximum Penalties**

The defendant agrees to waive indictment and plead guilty to a single count criminal

information charging the defendant with conspiracy to access a protected computer without

authorization, and thereby obtain information from a protected computer, and the offense was

committed for purposes of commercial advantage and private financial gain, in violation of Title

18, United States Code, Sections 371 and 1030(a)(2)(C) and (c)(2)(B)(i). The maximum

penalties for this offense are a maximum term of five years of imprisonment, a fine of $250,000,

full restitution, a special assessment, and three years of supervised release. The defendant

understands that this supervised release term is in addition to any prison term the defendant may

1



receive, and that a violation of a term of supervised release could result in the defendant being returned to prison for the full term of supervised release.

2.      Factual Basis for the Plea

The defendant will plead guilty because the defendant is in fact guilty of the charged offense. The defendant admits the facts set forth in the statement of facts filed with this plea agreement and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt. The statement of facts, which is hereby incorporated into this plea agreement, constitutes a stipulation of facts for purposes of Section 1B1.2(a) of the Sentencing Guidelines.

3.      Assistance and Advice of Counsel

The defendant is satisfied that the defendant's attorneys have rendered effective assistance. The defendant understands that by entering into this agreement, the defendant surrenders certain rights as provided in this agreement. The defendant understands that the rights of criminal defendants include the following:

      a.      the right to plead not guilty and to persist in that plea;

      b.      the right to a jury trial;

      c.      the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings; and

      d.      the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

2

4. **Role of the Court and the Probation Office**

The defendant understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum described above but that the Court will determine the defendant's actual sentence in accordance with Title 18, United States Code, Section 3553(a). The defendant understands that the Court has not yet determined a sentence and that any estimate of the advisory sentencing range under the U.S. Sentencing Commission's Sentencing Guidelines Manual the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court. Additionally, pursuant to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the Court, after considering the factors set forth in Title 18, United States Code, Section 3553(a), may impose a sentence above or below the advisory sentencing range, subject only to review by higher courts for reasonableness. The United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence.

Further, in accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States and the defendant will recommend to the Court that the following provisions of the Sentencing Guidelines apply:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(2) | 6 | (Base Offense Level) |
| U.S.S.G. § 2B1.1(b)(1)(E) | +8 | (Loss attributable to defendant more than $70,000 and equal or less than $120,000) |
| U.S.S.G. § 2B1.1(b)(11) | +2 | (Access devices/means of identification) |
| U.S.S.G. § 3B1.1(c) | +2 | (Leadership role) |

3

The United States and the defendant agree that the defendant has assisted the government in the investigation and prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. If the defendant qualifies for a two-level decrease in offense level pursuant to U.S.S.G. § 3E1.1(a) and the offense level prior to the operation of that section is a level 16 or greater, the government agrees to file, pursuant to U.S.S.G. § 3E1.1(b), a motion prior to, or at the time of, sentencing for an additional one-level decrease in the defendant's offense level.

5.      **Waiver of Appeal, FOIA and Privacy Act Rights**

The defendant also understands that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.

4

6.     **Special Assessment**

Before sentencing in this case, the defendant agrees to pay a mandatory special assessment of one hundred dollars ($100.00) per count of conviction.

7.     **Payment of Monetary Penalties**

The defendant understands and agrees that, pursuant to Title 18, United States Code, Section 3613, whatever monetary penalties are imposed by the Court will be due immediately and subject to immediate enforcement by the United States as provided for in Section 3613. Furthermore, within 14 days of a request, the defendant agrees to provide all of the defendant's financial information to the United States and the Probation Office and, if requested, to participate in a pre-sentencing debtor's examination and/or complete a financial statement under penalty of perjury. If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If the defendant is incarcerated, the defendant agrees to voluntarily participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

8.     **Restitution**

Defendant agrees that restitution is mandatory pursuant to 18 U.S.C. §3663A. Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. Pursuant to 18 U.S.C. § 3663A(c)(2), the defendant agrees that an offense listed in § 3663A(c)(1) gave rise to this plea agreement and as such, victims of the conduct described in the charging instrument, statement of facts or any related or similar conduct shall be entitled to restitution. Without

5

limiting the amount of restitution that the Court must impose, the Government is currently aware

that the following victims have suffered the following losses attributable to the defendant:

Maxient LLC                                  $217,097.60
102 Sunset Ave, Charlottesville, VA 22903

The parties acknowledge that determination of the identities, addresses and loss amounts

for all victims in this matter is a complicated and time consuming process. To that end,

defendant agrees, pursuant to 18 U.S.C. § 3664(d)(5), that the court may defer the imposition of

restitution until after the sentencing; however, defendant specifically waives the 90 day provision

found at 18 U.S.C. § 3664(d)(5) and consents to the entry of any orders pertaining to restitution

after sentencing without limitation.

9.      **Immunity from Further Prosecution in this District**

The United States will not further criminally prosecute the defendant in the Eastern

District of Virginia for the specific conduct described in the information or statement of facts.

10.     **Forfeiture Agreement**

The defendant understands that the forfeiture of assets is part of the sentence that must be

imposed in this case. The defendant agrees to forfeit all interests in any computer crime related

asset that the defendant owns or over which the defendant exercises control, directly or

indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute

for property that constitutes the proceeds of his offense, or facilitating property or property

involved in the offense. The defendant understands that if proceeds of the offense are not

available to the United States to be forfeited, the Court must enter a forfeiture money judgment

in the amount of the proceeds or forfeit substitute assets. *See United States v. Alamoudi*, 452

F.3d 310, 314 (4th Cir. 2006). The defendant further agrees to waive all interest in the asset(s) in

6

any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.  Defendant admits and agrees that the conduct described in the charging instrument and Statement of Facts provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.

**11.    Waiver of Further Review of Forfeiture**

The defendant further agrees to waive all constitutional and statutory challenges to forfeiture in any manner to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment.  The defendant also waives any failure by the Court to advise the defendant of any applicable forfeiture at the time the guilty plea is accepted as required by Rule 11(b)(1)(J).  The defendant agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding.  The defendant understands and agrees that all property covered by this agreement is subject to forfeiture as property facilitating illegal conduct giving rise to forfeiture.

**12.    The Defendant's Obligations Regarding Assets Subject to Forfeiture**

Upon request by the government, the defendant agrees to identify all assets in which the defendant had any interest or over which the defendant exercises or exercised control, directly or indirectly, within the past four years. The defendant agrees to take all steps as requested by the United States to obtain from any other parties by any lawful means any records of assets owned

7

at any time by the defendant. The defendant agrees to undergo any polygraph examination the United States may choose to administer concerning such assets and to provide and/or consent to the release of the defendant's tax returns for the previous five years.

13.     **Breach of the Plea Agreement and Remedies**

This agreement is effective when signed by the defendant, the defendant's attorney, and an attorney for the United States. The defendant agrees to entry of this plea agreement at the date and time scheduled with the Court by the United States (in consultation with the defendant's attorney). If the defendant withdraws from this agreement, or commits or attempts to commit any additional federal, state or local crimes, or intentionally gives materially false, incomplete, or misleading testimony or information, or otherwise violates any provision of this agreement, then:

a.     The United States will be released from its obligations under this agreement, including any obligation to seek a downward departure or a reduction in sentence. The defendant, however, may not withdraw the guilty plea entered pursuant to this agreement;

b.     The defendant will be subject to prosecution for any federal criminal violation, including, but not limited to, perjury and obstruction of justice, that is not time-barred by the applicable statute of limitations on the date this agreement is signed. Notwithstanding the subsequent expiration of the statute of limitations, in any such prosecution, the defendant agrees to waive any statute-of-limitations defense; and

c.     Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon any information provided, or

8

statements made, by the defendant, and all such information, statements, and leads derived therefrom may be used against the defendant. The defendant waives any right to claim that statements made before or after the date of this agreement, including the statement of facts accompanying this agreement or adopted by the defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines or any other provision of the Constitution or federal law.

Any alleged breach of this agreement by either party shall be determined by the Court in an appropriate proceeding at which the defendant's disclosures and documentary evidence shall be admissible and at which the moving party shall be required to establish a breach of the plea agreement by a preponderance of the evidence.

9

14.     Nature of the Agreement and Modifications

This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. The defendant and the defendant's attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in this plea agreement, to cause the defendant to plead guilty. Any modification of this plea agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.

Dana J. Boente
Acting United States Attorney

By: _____

Alexander T.H. Nguyen
Assistant United States Attorney

Peter V. Roman
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section

10

Defendant's Signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal information. Further, I fully understand all rights with respect to Title 18, United States Code, Section 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it.

Date: 4/9/09

Ariel Manuel Friedler
Defendant

Defense Counsel Signature: I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending information. Further, I have reviewed Title 18, United States Code, Section 3553 and the Sentencing Guidelines Manual, and I have fully explained to the defendant the provisions that may apply in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one.

Date: 4/10/14

David W. O'Brien
Stephen M. Byers
Kenneth L. Wainstein
Adam S. Lurie
Counsel for the Defendant

11

100% Recycled   30% PCW

Case 1:14-cr-00182-AJT   Document 11   Filed 06/04/14   Page 1 of 13 PageID# 20

```
                                        FILED
                                   IN OPEN COURT

                                    JUN   4 2014

                              CLERK, U.S. DISTRICT COURT
                                 ALEXANDRIA, VIRGINIA
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA

v.                                          Criminal No. 1:14-cr-182

ALOK KUMAR DHIR,

      Defendant

## PLEA AGREEMENT

Dana J. Boente, Acting United States Attorney for the Eastern District of Virginia,

Alexander T.H. Nguyen, Assistant United States Attorney; Peter V. Roman, Trial Attorney, U.S.

Department of Justice Computer Crime & Intellectual Property Section; the defendant, Alok

Kumar Dhir; and the defendant's counsel, Henry F. Schuelke III and William B. Shields, have

entered into an agreement pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The

terms of the agreement are as follows:

### 1.   Offense and Maximum Penalties

The defendant agrees to waive indictment and plead guilty to a single count criminal

information charging the defendant with conspiracy to access a protected computer without

authorization, and thereby obtain information from a protected computer, and the offense was

committed for purposes of commercial advantage and private financial gain, in violation of Title

18, United States Code, Sections 371 and 1030(a)(2)(C) and (c)(2)(B)(i). The maximum

penalties for this offense are a maximum term of five years of imprisonment, a fine of $250,000,

full restitution, a special assessment, and three years of supervised release. The defendant

understands that this supervised release term is in addition to any prison term the defendant may

1



receive, and that a violation of a term of supervised release could result in the defendant being returned to prison for the full term of supervised release.

2.    **Factual Basis for the Plea**

The defendant will plead guilty because the defendant is in fact guilty of the charged offense. The defendant admits the facts set forth in the statement of facts filed with this plea agreement and agrees that those facts establish guilt of the offense charged beyond a reasonable doubt. The statement of facts, which is hereby incorporated into this plea agreement, constitutes a stipulation of facts for purposes of Section 1B1.2(a) of the Sentencing Guidelines.

3.    **Assistance and Advice of Counsel**

The defendant is satisfied that the defendant's attorney has rendered effective assistance. The defendant understands that by entering into this agreement, defendant surrenders certain rights as provided in this agreement. The defendant understands that the rights of criminal defendants include the following:

      a.    the right to plead not guilty and to persist in that plea;

      b.    the right to a jury trial;

      c.    the right to be represented by counsel – and if necessary have the court appoint counsel – at trial and at every other stage of the proceedings; and

      d.    the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses.

2

### 4.    Role of the Court and the Probation Office

The defendant understands that the Court has jurisdiction and authority to impose any sentence within the statutory maximum described above but that the Court will determine the defendant's actual sentence in accordance with Title 18, United States Code, Section 3553(a). The defendant understands that the Court has not yet determined a sentence and that any estimate of the advisory sentencing range under the U.S. Sentencing Commission's Sentencing Guidelines Manual the defendant may have received from the defendant's counsel, the United States, or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the Probation Office, or the Court. Additionally, pursuant to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005), the Court, after considering the factors set forth in Title 18, United States Code, Section 3553(a), may impose a sentence above or below the advisory sentencing range, subject only to review by higher courts for reasonableness. The United States makes no promise or representation concerning what sentence the defendant will receive, and the defendant cannot withdraw a guilty plea based upon the actual sentence.

Further, in accordance with Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States and the defendant will recommend to the Court that the following provisions of the Sentencing Guidelines apply:

| | | |
|---|---|---|
| U.S.S.G. § 2B1.1(a)(2) | 6 | (Base Offense Level) |
| U.S.S.G. § 2B1.1(b)(1)(E) | +8 | (Loss attributable to defendant more than $70,000 and equal or less than $120,000) |
| U.S.S.G. § 2B1.1(b)(11) | +2 | (Access devices/means of identification) |

The United States and the defendant agree that the defendant has assisted the government in the investigation and prosecution of the defendant's own misconduct by timely notifying

3

authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. If the defendant qualifies for a two-level decrease in offense level pursuant to U.S.S.G. § 3E1.1(a) and the offense level prior to the operation of that section is a level 16 or greater, the government agrees to file, pursuant to U.S.S.G. § 3E1.1(b), a motion prior to, or at the time of, sentencing for an additional one-level decrease in the defendant's offense level.

     5.     **Waiver of Appeal, FOIA and Privacy Act Rights**

The defendant also understands that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Nonetheless, the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatsoever, in exchange for the concessions made by the United States in this plea agreement. This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b). The defendant also hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act, Title 5, United States Code, Section 552a.

6.      **Special Assessment**

Before sentencing in this case, the defendant agrees to pay a mandatory special assessment of one hundred dollars ($100.00) per count of conviction.

7.      **Payment of Monetary Penalties**

The defendant understands and agrees that, pursuant to Title 18, United States Code, Section 3613, whatever monetary penalties are imposed by the Court will be due immediately and subject to immediate enforcement by the United States as provided for in Section 3613. Furthermore, within 14 days of a request, the defendant agrees to provide all of the defendant's financial information to the United States and the Probation Office and, if requested, to participate in a pre-sentencing debtor's examination and/or complete a financial statement under penalty of perjury. If the Court imposes a schedule of payments, the defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If the defendant is incarcerated, the defendant agrees to voluntarily participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

8.      **Restitution**

Defendant agrees that restitution is mandatory pursuant to 18 U.S.C. §3663A. Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. Pursuant to 18 U.S.C. § 3663A(c)(2), the defendant agrees that an offense listed in § 3663A(c)(1) gave rise to this plea agreement and as such, victims of the conduct described in the charging instrument, statement of facts or any related or similar conduct shall be entitled to restitution. Without

5

limiting the amount of restitution that the Court must impose, the Government is currently aware that the following victims have suffered the following losses attributable to the defendant:

Maxient LLC                                    $217,097.60
102 Sunset Ave, Charlottesville, VA 22903

The parties acknowledge that determination of the identities, addresses and loss amounts for all victims in this matter is a complicated and time consuming process. To that end, defendant agrees, pursuant to 18 U.S.C. § 3664(d)(5), that the court may defer the imposition of restitution until after the sentencing; however, defendant specifically waives the 90 day provision found at 18 U.S.C. § 3664(d)(5) and consents to the entry of any orders pertaining to restitution after sentencing without limitation.

### 9.    Immunity from Further Prosecution in this District

The United States will not further criminally prosecute the defendant in the Eastern District of Virginia for the specific conduct described in the information or statement of facts.

### 10.    Defendant's Cooperation

The defendant agrees to cooperate fully and truthfully with the United States, and provide all information known to the defendant regarding any criminal activity as requested by the government. In that regard:

> a.    The defendant agrees to testify truthfully and completely at any grand juries, trials or other proceedings.
>
> b.    The defendant agrees to be reasonably available for debriefing and pre-trial conferences as the United States may require.
>
> c.    The defendant agrees to provide all documents, records, writings, or materials of any kind in the defendant's possession or under the

6

defendant's care, custody, or control relating directly or indirectly to all areas of inquiry and investigation.

d.  The defendant agrees that, at the request of the United States, the defendant will voluntarily submit to polygraph examinations, and that the United States will choose the polygraph examiner and specify the procedures for the examinations.

e.  The defendant agrees that the Statement of Facts is limited to information to support the plea. The defendant will provide more detailed facts relating to this case during ensuing debriefings.

f.  The defendant is hereby on notice that the defendant may not violate any federal, state, or local criminal law while cooperating with the government, and that the government will, in its discretion, consider any such violation in evaluating whether to file a motion for a downward departure or reduction of sentence.

g.  Nothing in this agreement places any obligation on the government to seek the defendant's cooperation or assistance.

11.  **Use of Information Provided by the Defendant Under This Agreement**

The United States will not use any truthful information provided pursuant to this agreement in any criminal prosecution against the defendant in the Eastern District of Virginia, except in any prosecution for a crime of violence or conspiracy to commit, or aiding and abetting, a crime of violence (as defined in Title 18, United States Code, Section 16). Pursuant to U.S.S.G. section 1B1.8, no truthful information that the defendant provides under this

7

agreement will be used in determining the applicable guideline range, except as provided in section 1B1.8(b). Nothing in this plea agreement, however, restricts the Court's or Probation Officer's access to information and records in the possession of the United States. Furthermore, nothing in this agreement prevents the government in any way from prosecuting the defendant should the defendant knowingly provide false, untruthful, or perjurious information or testimony, or from using information provided by the defendant in furtherance of any forfeiture action, whether criminal or civil, administrative or judicial. The United States will bring this plea agreement and the full extent of the defendant's cooperation to the attention of other prosecuting offices if requested.

### 12.    Defendant Must Provide Full, Complete and Truthful Cooperation

This plea agreement is not conditioned upon charges being brought against any other individual. This plea agreement is not conditioned upon any outcome in any pending investigation. This plea agreement is not conditioned upon any result in any future prosecution which may occur because of the defendant's cooperation. This plea agreement is not conditioned upon any result in any future grand jury presentation or trial involving charges resulting from this investigation. This plea agreement is conditioned upon the defendant providing full, complete and truthful cooperation.

### 13.    Motion for a Downward Departure

The parties agree that the United States reserves the right to seek any departure from the applicable sentencing guidelines, pursuant to Section 5K1.1 of the Sentencing Guidelines and Policy Statements, or any reduction of sentence pursuant to Rule 35(b) of the Federal Rules of

8

Criminal Procedure, if, in its sole discretion, the United States determines that such a departure or reduction of sentence is appropriate.

### 14.   Forfeiture Agreement

The defendant understands that the forfeiture of assets is part of the sentence that must be imposed in this case. The defendant agrees to forfeit all interests in any computer crime related asset that the defendant owns or over which the defendant exercises control, directly or indirectly, as well as any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense, or facilitating property or property involved in the offense. The defendant understands that if proceeds of the offense are not available to the United States to be forfeited, the Court must enter a forfeiture money judgment in the amount of the proceeds or forfeit substitute assets. *See United States v. Alamoudi*, 452 F.3d 310, 314 (4th Cir. 2006). The defendant further agrees to waive all interest in the asset(s) in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal. The defendant agrees to consent to the entry of orders of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant admits and agrees that the conduct described in the charging instrument and Statement of Facts provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government.

### 15.   Waiver of Further Review of Forfeiture

The defendant further agrees to waive all constitutional and statutory challenges to forfeiture in any manner to any forfeiture carried out in accordance with this Plea Agreement on

9

any grounds, including that the forfeiture constitutes an excessive fine or punishment. The
defendant also waives any failure by the Court to advise the defendant of any applicable
forfeiture at the time the guilty plea is accepted as required by Rule 11(b)(1)(J). The defendant
agrees to take all steps as requested by the United States to pass clear title to forfeitable assets to
the United States, and to testify truthfully in any judicial forfeiture proceeding. The defendant
understands and agrees that all property covered by this agreement is subject to forfeiture as
property facilitating illegal conduct giving rise to forfeiture.

### 16.  The Defendant's Obligations Regarding Assets Subject to Forfeiture

Upon request by the government, the defendant agrees to identify all assets in which the
defendant had any interest or over which the defendant exercises or exercised control, directly or
indirectly, within the past four years. The defendant agrees to take all steps as requested by the
United States to obtain from any other parties by any lawful means any records of assets owned
at any time by the defendant. The defendant agrees to undergo any polygraph examination the
United States may choose to administer concerning such assets and to provide and/or consent to
the release of the defendant's tax returns for the previous five years.

### 17.  Breach of the Plea Agreement and Remedies

This agreement is effective when signed by the defendant, the defendant's attorney, and
an attorney for the United States. The defendant agrees to entry of this plea agreement at the
date and time scheduled with the Court by the United States (in consultation with the defendant's
attorney). If the defendant withdraws from this agreement, or commits or attempts to commit
any additional federal, state or local crimes, or intentionally gives materially false, incomplete, or
misleading testimony or information, or otherwise violates any provision of this agreement, then:

10

a.   The United States will be released from its obligations under this agreement, including any obligation to seek a downward departure or a reduction in sentence. The defendant, however, may not withdraw the guilty plea entered pursuant to this agreement;

b.   The defendant will be subject to prosecution for any federal criminal violation, including, but not limited to, perjury and obstruction of justice, that is not time-barred by the applicable statute of limitations on the date this agreement is signed. Notwithstanding the subsequent expiration of the statute of limitations, in any such prosecution, the defendant agrees to waive any statute-of-limitations defense; and

c.   Any prosecution, including the prosecution that is the subject of this agreement, may be premised upon any information provided, or statements made, by the defendant, and all such information, statements, and leads derived therefrom may be used against the defendant. The defendant waives any right to claim that statements made before or after the date of this agreement, including the statement of facts accompanying this agreement or adopted by the defendant and any other statements made pursuant to this or any other agreement with the United States, should be excluded or suppressed under Fed. R. Evid. 410, Fed. R. Crim. P. 11(f), the Sentencing Guidelines or any other provision of the Constitution or federal law.

11

Any alleged breach of this agreement by either party shall be determined by the Court in an appropriate proceeding at which the defendant's disclosures and documentary evidence shall be admissible and at which the moving party shall be required to establish a breach of the plea agreement by a preponderance of the evidence.

18.     **Nature of the Agreement and Modifications**

This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. The defendant and the defendant's attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in this plea agreement, to cause the defendant to plead guilty. Any modification of this plea agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.


Dana J. Boente
Acting United States Attorney


By: _____

Alexander T.H. Nguyen
Assistant United States Attorney

Peter V. Roman
Trial Attorney, U.S. Department of Justice
Computer Crime & Intellectual Property Section


12

Defendant's Signature: I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending criminal information. Further, I fully understand all rights with respect to Title 18, United States Code, Section 3553 and the provisions of the Sentencing Guidelines Manual that may apply in my case. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this agreement and voluntarily agree to it.

Date: 4-8-14

Alok Kumar Dhir
Defendant

Defense Counsel Signature: I am counsel for the defendant in this case. I have fully explained to the defendant the defendant's rights with respect to the pending information. Further, I have reviewed Title 18, United States Code, Section 3553 and the Sentencing Guidelines Manual, and I have fully explained to the defendant the provisions that may apply in this case. I have carefully reviewed every part of this plea agreement with the defendant. To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one.

Date: 4-8-14

Henry F. Schuelke III
William B. Shields
Counsel for the Defendant

13

VIRGINIA:

## IN THE CIRCUIT COURT FOR THE COUNTY OF ARLINGTON

|  |  |
|---|---|
| MAXIENT, LLC, a Virginia limited liability company,   : | |
| : | Civil Action No. 14-1822 |
| Plaintiff,    : | |
| : | |
| v.    : | |
| : | |
| SYMPLICITY CORPORATION, a Delaware corporation, ARIEL MANUEL FRIEDLER, an individual, ALOK KUMAR DHIR, an individual, and MATTHEW KELLEY, an individual,    : | |
| : | |
| Defendants.    : | |

## NOTICE TO ADVERSE PARTIES AND STATE COURT OF NOTICE OF REMOVAL TO FEDERAL COURT

PLEASE TAKE NOTICE THAT Defendants Symplicity Corporation, Ariel Manuel Friedler, Alok Kumar Dhir, and Matthew Kelley (collectively, "Defendants"), pursuant to 28 U.S.C. § 1446(d), hereby give Notice that a Notice of Removal was filed in the United States District Court for the Eastern District of Virginia on September 8, 2014.

A copy of said Notice of Removal is attached to this Notice as Attachment 1, and is served and filed herewith.

1

Dated: September 8, 2014

Respectfully submitted,

David W. O'Brien (VSB No. 14924)
Daniel T. Campbell (VSB No. 41320)
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
(202) 624-2500 (Office Phone)
(202) 624-5116 (Office Fax)

*Attorneys for Defendants Symplicity*
*Corporation, Ariel Manuel Friedler, Alok*
*Kumar Dhir, and Matthew Kelley*

2

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September 2014, I caused a copy of the foregoing

Notice to Adverse Parties and State Court of Notice of Removal to Federal Court, postage

prepaid, by first class mail, to the following:

> Bernard J. DiMuro, Esq.
> Stephen L. Neal, Esq.
> Taylor S. Chapman, Esq.
> DiMuroGinsberg, PC
> 1101 King Street, Suite 610
> Alexandria, Virginia 23314

David W. O'Brien (Va. Bar No. 14924)

3